UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NICOLAS COVARRUBIAS-MENDOZA,<br><br>Defendant. | Case No. 1:12-cr-00078-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
|---|---|

## INTRODUCTION

The Court has before it Nicolas Covarrubias- Mendoza's Motion to Dismiss the Government's Indictment. (Dkt. 15). For the reasons explained below, the Court will grant the motion.

## BACKGROUND

Nicolas Covarrubias-Mendoza ("Covarrubias") is a citizen of Mexico. *Govt.'s Ex. 1* at 1, Dkt. 17-1. On April 16, 1994, at the age of thirteen, Covarrubias was admitted to the United States as a lawful permanent resident (LPR). *Def's Ex. A*, Dkt. 15-2.

On September 16, 1999, Covarrubias was convicted of driving without privileges. *Govt.'s Ex. 2* at 11, Dkt. 17-2. In August 2000 Covarrubias was convicted of both shooting from or across a public highway and malicious injury to property. *Id.* at 9. Three months later, on December 4, 2000, Covarrubias was convicted of possession of drug paraphernalia with intent to use, as well as alcohol beverage possess/consume by a minor.

*Id.* at 7. Covarrubias was also convicted of third-degree felony robbery on September 27, 2001, in Malheur County, Oregon and was sentenced to nine months jail. *Govt.'s Ex. 3* at 1, Dkt. 17-3.

On July 31, 2003, Covarrubias was served with a notice to appear for removal proceedings, which asserted that he was subject to removal from the United States due to a conviction for an offense that involved firearms. *Def's Ex. B*, Dkt. 15-3. Covarrubias initially appeared before an immigration judge (IJ) on August 4, 2003, in Portland, Oregon, and requested time to obtain an attorney. *Def.'s Ex. C* at 4-5, Dkt. 15-4. Covarrubias was granted his request and the hearing was continued. *Id.*

Covarrubias next appeared before the IJ on August 6, 2003, with a pro bono attorney. *Def.'s Ex. B* at 8, Dkt. 15-3. The attorney requested a one-week continuance so that Covarrubias could have more time to find an attorney. *Def. Ex.C* at 8-9, Dkt. 15-4. The IJ granted this continuance. *Id.* at 9. The pro bono attorney also indicated to the IJ that Covarrubias appeared to be eligible for cancellation of removal. *Id.* at 8-9.

Removal proceedings against Covarrubias resumed on August 13, 2003, where he was once again represented by a pro bono attorney. *Id.* at 15. The IJ determined that Covarrubias was eligible to apply for cancellation of removal. *Id.* at 17-18. Covarrubias expressed his desire to apply for cancellation of removal. *Id.* at 17.

The following week, with assistance from his attorney, Covarrubias submitted an application for cancellation of removal and the IJ set the matter for an evidentiary hearing. *Id.* at 23. On October 22, 2003, Covarrubias appeared pro se, where the IJ considered his application for cancellation of removal. *Id.* at 29. After speaking with

Covarrubias and considering the evidence presented, the IJ declined to grant cancellation of removal. *Id.* at 88. Covarrubias was ordered removed to Mexico at the conclusion of the hearing. *Def.'s Ex. E*, Dkt. 15-6. On October 28, 2003, Covarrubias was removed to Mexico. *Def.'s Ex. F*, Dkt. 15-7.

Covarrubias claims, and the Government concedes, that the IJ who entered the removal order on October 22, 2003 failed to advise Covarrubias concerning his eligibility to seek voluntary departure. *Def.'s Mem.* at 5-7, Dkt. 15-1, *Govt.'s Mem.* at 2, Dkt. 17.

Covarrubias re-entered the United States on or about November 12, 2003. *Def. Ex. G*, Dkt. 15-8. The removal order issued in October 2003 was reinstated on November 26, 2003 and Covarrubias was again removed to Mexico. *Id.* Covarrubias again re-entered the United States on January 27, 2009, and was once again removed based on reinstatement of the October 2003 removal order. *Def.'s Ex. H*, Dkt. 15-9.

On March 13, 2012, Covarrubias was charged with illegal re-entry in violation of 18 U.S.C. § 1326. *Govt.'s Indictment*, Dkt. 1. The United States Government bases this Indictment upon a removal order entered October 6, 2008, which was the reinstatement of the previous removal order entered in 2003. *Def.'s Ex. H*, Dkt. 15-9. Covarrubias has filed a motion to dismiss the Indictment. *Def.'s Mem.*, Dkt. 15-1. Covarrubias seeks dismissal on the grounds that the removal order entered on October 22, 2003, entered as it was without a full advisement of eligibility to seek voluntary departure, violated his right to due process, resulting in prejudice. *Id.* at 5.

## LEGAL STANDARD

Under 8 U.S.C. § 1326, a defendant charged with illegal re-entry after removal may collaterally attack the removal order. *United States v. Mendoza-Lopez,* 481 U.S. 828, 837-38 (1987). To sustain a collateral attack, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). An underlying removal order is fundamentally unfair if: (1) defects in the underlying deportation proceeding violated a defendant's due process rights and (2) the defendant was prejudiced because of such defects. *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1048 (9th Cir. 2004). If a defendant successfully demonstrates prejudice, the burden shifts and the government may attempt to show that that the procedural violation could not have changed the outcome. United States v. Gonzalez-Valerio, 364 F.3d 1051, 1054 (9th Cir.2003).

## ANALYSIS

### I. Exhaustion

As stated above, the first hurdle for an alien challenging a deportation order is to demonstrate that he exhausted any administrative remedies that may have been available to seek relief against the underlying order. 8 U.S.C. § 1326(d). If, however, an alien is not informed that he was eligible for relief from removal, the exhaustion requirement will not bar collateral review. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004). It is undisputed that Covarrubias was not informed by the IJ that he was eligible

for voluntary removal under § 1229(c). It follows that Covarrubias is exempt from compliance with the exhaustion requirement.

## II. Judicial Review

The second hurdle for a defendant challenging a deportation order is to demonstrate that the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review. 8 U.S.C. § 1326(d). No alien may collaterally attack an underlying deportation order if he made a valid waiver of his right to appeal such order at the deportation proceeding. *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001). For a waiver to be valid, however, it must be both "considered and intelligent." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (citing *Mendoza-Lopez*, 481 U.S. at 840). If a deportee's waiver of his appellate rights is not "considered and intelligent," he is deprived of meaningful judicial review in violation of due process. *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998).

Covarrubias' waiver of his appellate rights could not have been considered and intelligent because the IJ did not inform him of his eligibility to seek voluntary departure. Therefore, the Court finds that Covarrubias was deprived of the opportunity for judicial review.

## III. Prejudice

The last hurdle for a defendant challenging a deportation order is to demonstrate that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). As cited above,


an underlying removal order is fundamentally unfair if: (1) defects in the underlying deportation proceeding violated a defendant's due process rights; and (2) the defendant was prejudiced as a result of such defects. *Ubaldo-Figueroa,* 364 F.3d at 1048.

Covarrubias is able to satisfy the first prong. As established above, Covarrubias' due process rights were violated because the IJ failed to inform him of his eligibility to seek pre-conclusion voluntary departure.

The real crux of the matter before the Court is whether Covarrubias was prejudiced as a result of the due process violation. To establish prejudice, Covarrubias need not show that the IJ would have actually granted him relief; rather, he is only required to show he had a "plausible" basis for seeking relief from deportation. *See Arrieta*, 224 F.3d at 1079. A plausible claim of relief "requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049-50 (9th Cir. 2012) (citations omitted).

In making a decision whether to grant voluntary departure to aliens who are statutorily eligible, the IJ may consider "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record, and other evidence of bad character or the undesirability of the applicant as a permanent resident …. [as well as] compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." *United States v. Alcazar-Bustos*, 382 Fed. Appx. 568, 570 (9th Cir. 2010) (referring to *re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (B.I.A. 1999). IJs

have "broader authority to grant" voluntary departure than some other forms of immigration relief. *Id.*

"[R]emovable aliens seeking voluntary departure fall on a continuum between those who have no criminal record at all and significant positive ties to the United States, and those who have serious records and no countervailing equities. For individuals between these extremes, the question of plausibility requires a closer examination of the facts and a comparison with similar cases." *Alcazar-Bustos*, 382 Fed. Appx. at 570.

This case lies somewhere in the middle of the continuum, and several analogous and similar cases in the Ninth Circuit shed light on how the Court should rule. In *Alcazar-Bustos*, the defendant had three juvenile adjudications and, while still a teenager, two convictions for firearm possession resulting in prison terms. *Id.* at 569. The Ninth Circuit found the defendant's near-lifetime residence in the U.S. and his family members' citizenship, were significant factors weighing in his favor. *Id.* at 570. It also found his "convictions, associations with gang members, prior drug use, and sporadic work history" to be negative factors that mitigated against relief. *Id.* The Court ultimately found it plausible that an IJ would have granted pre-conclusion voluntary departure. *Id.* at 571.

In *United States v. Arrieta*, the Ninth Circuit found that a defendant who had been convicted of attempted rape but had family ties to the United States plausibly could have been granted waiver of deportation. *Id.* at 570 (referring to *Arrieta*, 224 F.3d at 1078, 1082-83). The court, in *Arrieta,* noted that the defendant provided important support, both financial and practical, to his family. *Id.* (citing to *Arrieta* at 1080, 1082). It is also important to understand that the defendant in *Arrieta* was seeking relief under 8 U.S.C. §

MEMORANDUM DECISION AND ORDER - 7

1182(c), "extreme hardship," rather than voluntary departure under § 1229(c). *Id.* The "showing required for a deportation waiver at issue in *Arrieta* is more difficult to meet than the standard for voluntary departure." *Id.*

In *United States v. Pallares-Galan*, the defendant had been convicted of two sexual misdemeanor charges. *Pallares-Galan*, 359 F.3d 1088, 1104 (9th Cir. 2004). The Ninth Circuit determined that an IJ could have concluded that the defendant's claim for relief from deportation would have been plausible. *Id.* In making this determination, the Court looked at positive factors such as: the defendant living twenty-four years, more than half his life, in the U.S.; his excellent work history, steady employment, paying taxes, and never having received public assistance; and defendant's family ties such as his marriage to a legal permanent resident. *Id.*

In *Ubaldo-Figueroa*, the defendant had been convicted of attempted first-degree burglary of a dwelling. *Ubaldo-Figueroa* at 1046. When weighing this negative factor, the Ninth Circuit also looked at defendant's positive factors. These included his stellar work history and substantial family ties, including a U.S. citizen wife and two U.S. citizen children. *Id.* at 1051. The court also made note of the defendant's active role in his children's education and upbringing. *Id.*

With these cases in mind, the Court looks to whether an IJ could have determined that a Covarrubias claim for relief from deportation under § 1229(c) would have been plausible. Covarrubias' case contains equities that weigh both for and against immigration relief under § 1229(c). The Court first turns to Covarrubias' positive factors.

1. **Positive Factors**

MEMORANDUM DECISION AND ORDER - 8

### a. Length of Residence

At the deportation hearing in October 2003, Covarrubias' was twenty-two years old and a legal permanent resident of the United States. *Def.'s Ex C.* at 3, 16, Dkt. 15-4. Covarrubias gained this status as a young teenager around age thirteen; meaning nine years of his relatively young life was spent as a legal permanent resident in the United States. *Def's Ex. A*, Dkt. 15-2. Nearly half of Covarrubias' life was spent on United States soil. *Id.* As stated above, the courts in *Alcazar* and *Pallares-Galan* gave significant weight to each defendant's length of residence. This Court also gives Covarrubias' length of residence significant weight.

### b. Family Ties

Covarrubias had strong family ties to the United States in October 2003. *Def.'s Ex. C* at 55, Dkt. 15-4. While his sister and grandmother still lived in Mexico in October 2003, both his Mother and his Father lived in the United States. *Id.* Covarrubias' parents maintained a residence in Ontario, Oregon and had significant involvement in Covarrubias' life. *Id.* In fact, Covarrubias lived with his parents for a significant period of his time in the United States. *Id.* Further, his family was present in the courtroom and supporting him at his deportation hearing in 2003. *Id.* at 7. In each of the four cases cited above, the courts viewed significant family ties as a weighty positive factor. Because both of Covarrubias' parents lived in the United States, maintained a permanent residence, and assumed a strong presence in his life as of October 2003, this Court finds Covarrubias had significant family ties to the United States.

Defense counsel asks the Court to view Covarrubias' girlfriend as a positive factor, much like a familial tie to the United States. It is true that Covarrubias' girlfriend is a U.S. citizen and they were together for approximately three-years prior to the deportation hearing. *Id.* at 42, *Def.'s Ex. I* at 2, Dkt. 15-10. The Court even acknowledges that Covarrubias and his girlfriend lived together for a period of time. *Id.* at 42. The Court, however, is unwilling to give much positive weight to this factor because Covarrubias was not legally married to his girlfriend, nor did he share any children in common with her. *Id.* at 17, 34.

### c. Financial Ability

Covarrubias' asserts in an affidavit filed July 30, 2012, that he had access to enough money to pay bond and return to Mexico voluntarily per § 1229(c). *Def.'s Ex. I* at 2, Dkt. 15-10. The Government contends that because Covarrubias was unable to pay the application fee for cancellation of removal, he would also be unable to raise enough money to pay bond and travel from Portland, Oregon to Mexico. *Govt.'s Mem.* at 8, Dkt. 17. The Court is un-persuaded. The Court finds Covarrubias' assertion regarding access to finances plausible and a somewhat positive factor.

### 2. Negative Factors

#### a. Criminal History

Covarrubias was convicted of third-degree burglary, for which he received a nine-month jail sentence. *Govt.'s Ex. 3* at 1, Dkt. 17-3. Were this Covarrubias' only conviction, the Court would be less inclined to give much weight to this factor. But, there are other significant aspects of his criminal history which cannot be overlooked.

Included in Covarrubias' misdemeanor convictions are crimes involving discharge of a firearm on public streets, possession of drug paraphernalia, possession/use of alcohol as a minor, malicious injury to property, driving without privileges, and interfering with making a police report. *Govt.'s Ex. 2* at 7, 9, 11, Dkt. 17-2.

Covarrubias' criminal history is more extensive than the four defendants mentioned above, in which the Ninth Circuit found prejudice arising from due process errors. However, none of Covarrubias's prior convictions are as serious as the more serious convictions of those defendants. *Alcazar-Bustos* had three juvenile adjudications as well as two convictions for firearms resulting in prison terms. *Arrieta* was convicted of attempted rape. *Pallares-Galan* was convicted of two sexual crimes. *Ubaldo-Figueroa* was convicted of first-degree burglary of a dwelling. The Court, however, is not fully persuaded that Covarrubias' more extensive criminal history significantly differentiates him from these defendants.

While misdemeanors are violations of the law, the Court does not view Covarrubias' driving without privileges, minor alcohol possession/consumption, possession of drug paraphernalia, and malicious injury to property convictions as serious in nature. But, the Court finds his crimes involving discharge of a firearm on public streets and interfering with making a police report more troubling. These are more troubling because both crimes pose a more significant danger to society. Even with these more serious misdemeanor charges in mind, the Court is still un-persuaded that Covarrubias' criminal history is worse than the defendants' histories cited above.

Covarrubias' most serious crime was a third-degree burglary charge, significantly less serious than *Ubaldo-Figueroa's* first-degree burglary of an individual's dwelling. For this crime, Covarrubias was sentenced to nine months jail, not multiple prison terms like *Alcazar-Bustos.* And, unlike two of the defendants cited above, Covarrubias has no convictions for sexual crimes, such as attempted rape.

The Court notes and is concerned with the number of convictions that Covarrubias committed in a relatively short span of about three years just prior to deportation. The Court, however, views the nature of Covarrubias' convictions as less serious in nature than any of the defendants cited above. Thus, when weighing Covarrubias' criminal history, the Court finds it to be less serious than it may appear at first glance.

### b. Evidence of Bad Character

In addition to Covarrubias' convictions, the Court may consider evidence of his bad character and undesirability as a permanent resident. *Alcazar-Bustos*, 382 Fed. Appx. at 570 (referring to *re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (B.I.A. 1999). At the deportation hearing, Covarrubias admitted to several un-adjudicated criminal acts, including a violation of his probation for drinking beer. *Def.'s Ex. C* at 55, Dkt. 15-4. Other un-convicted bad acts include an arrested for assaulting his girlfriend as well as pushing her down, causing a cut on her leg. *Id* at 44-45, 66. Covarrubias also violated a no-contact order between him and his girlfriend. *Id.* at 52. Finally, the Court notes that Covarrubias lied to the IJ under oath. *Id.* at 63.

The IJ was also greatly concerned about Covarrubias' lack of truthfulness. *Id.* at 9. In fact, the IJ went so far as to tell Covarrubias that his lying "could be the reason why

[he] get[s] deported" and that Covarrubias was "right on the edge" of deportation or cancellation. *Id.* at 59, 64. But, this insight into the IJ's decision making is telling for other reasons as well. It tells the Court that an IJ could have, and was seriously considering, granting Covarrubias cancellation from deportation, a higher standard than voluntary deportation.

### c. Work History

At the deportation hearing, Covarrubias testified that he had been working in construction and as a farm worker for six months prior to being placed in removal proceedings. *Id.* at 50-51. Covarrubias has limited education with which to find employment, never completing the tenth-grade. *Id.* at 50. Because both the construction and farm industries are sporadic and seasonal by nature, this Court finds does not find Covarrubias' work history to be either a positive or negative factor.

### d. Prejudice Finding

Covarrubias' significant familial ties to the United States, his nine-years as a legal permanent resident, and the substantial fact that the IJ at his deportation hearing was on the edge of granting him cancellation from deportation – a more difficult burden to overcome than voluntary deportation – weigh heavily in favor of plausibility. While there are significant negative factors, the Court does not find that the nature and extent of Covarrubias' criminal history and character overshadows the positive factors in this case. The Court holds that an IJ could have plausibly granted voluntary departure to Covarrubias and that he was prejudiced as a result of the due process violation.

## IV. Changed Outcome.

Having found that Covarrubias has carried his burden of proving prejudice, the burden now shifts to the Government to show that the procedural violation could not have changed the outcome. *Gonzalez–Valerio*, 364 F.3d at 1054. The Government first argues that Covarrubias has failed to show that he would have applied for voluntary departure in lieu of cancellation of removal. *Govt.'s Mem.* at 7-9, Dkt. 17. The Government, however, has cited no case law suggesting Covarrubias is required to make such a demonstration. As previously explained, Covarrubias need only show a "plausible" basis for seeking relief from deportation. *See Arrieta*, 224 F.3d at 1079.

## ORDER

**IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Dkt. 15) is **GRANTED**.

DATED: September 27, 2012

_____
B. Lynn Winmill
Chief Judge
United States District Court